# EXHIBIT A

**Belknap, Thomas H.**

| | |
|---|---|
| **From:** | Pan Oceanic [panoceanic@panoceanic.com] |
| **Sent:** | Thursday, September 10, 2009 6:09 PM |
| **To:** | 'isc-pci' |
| **Subject:** | 70000MT 10PCT MOLOO WC MEXICO/CHINA |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |
| **Attachments:** | RSUSA GENCON 2009 RIDER-a.doc; Gencon 1994 RSUSA CP-a.doc |

STEPHEN / STEVEN

ALL SUBS ARE LIFTED PLSD TO RECAP HAVING CLEAN FIXED WITH CP DATED 9TH SEP 2009, AS FOLLOWING:-

==================================================================
ALL NEGOTIATIONS / FIXTURE IF ANY TO REMAIN PRIVATE AND CONFIDENTIAL
AND ANY DETAILS NOT TO BE REVEALED TO ANY THIRD PARTIES
==================================================================

M.V. KM IMABARI
PAN FLAG/BUILT 2009/NK CLASS
76,634MT DWT ON 14.139M SSW
GT/NT 39,727/25,754 (actual tonnage to be informed)
LOA/BEAM: 225/32.26M (actual dimension to be measured)
GRAIN CAPACITY 90,740.35 CBM
7 HO/7 HA
TYPE OF HATCH COVERS SIDE ROLLING
ADA WOG

FOR

1. OWRS: PAN OCEANIC MARITIME, INC.

2. CHTRS: RSUSA, LLC HOUSTON,TEXAS
            509 MELANIE DRIVE
            PHARR, TEXAS 78577

3. CGO&QTTY: 70,000 MT IRON ORE IN BULK, 10% MOLOO,DRI/DIRP/CONCENTRATE ALWAYS EXCLUDED.
    CARGO TO BE LOAD ,TRANSPORT AND DISCHARGED IN ACCORDANCE WITH IMO RECOMMENDATIONS.

4. LAYCAN: 2-12/OCT 2009 (VSL'S ITINERARY: ETA LAZARO CARDENAS ON/ABT 3-4/OCT)
    OWNERS TO GIVE 10/7/5/3/2/1 DAYS ETA LOADING PORT REPORT FOR CHTRS CARGO/TERMINAL'S READINESS.

5. LOAD PORT/S: 1SP/SB LAZARO CARDENAS,MEXICO AND 1 SP/SB MANZANILLO, MEXICO LOADING AT YESERA FACILITY, AT WHICH FACILITY CHTRS GUARANTEE DRAFT 13.50M SWAD

6. DISCH PORT: 1SP/SB CHINA CHOPT,WHICH TO BE

12/30/2009

DECLARED BY CHRS LATEST 15 DAYS AFTER VSL DEPARTURE FROM LAST L/P

7. L/D RATE: LAZARO CARDENAS 10000 PWWD SHINC AND MANZANILLO 20,000MT PWWD SHINC / 1SBP CHINA 25,000MT PWWD SHINC

8. FRT RATE: US$ 30.75/MT FIOST BSS 2/1
9. 95 PCT FRT TO BE PAID WITHIN 5 BANKING DAYS AFTER COMPLETION OF LOADING BY T/T TO OWNERS' NOMINATED BANK ACCOUNT. THE B/L(S) IS TO BE MARKED "FREIGHT PAYABLE AS PER C/P". FRT DEEMED EARNED UPON COMPLETION OF LOADING DISCOUNTLESS, NONREFUNDABLE WHETHER VSL AND/OR CARGO LOST OR NOT LOST. BALANCE OF 5 PCT PAYABLE UPON SETTLEMENT OF DEMURRAGE/DESPATCH.
DEMURRAGE AND DESPATCH IF ANY TO BE SETTLED WITHIN 30 DAYS AFTER COMPLETION OF DISCHARGING.

10. DEMURRAGE USD20000 BENDS/DHD LTS BEND

11. CHRTERERS AGENTS AT LDG/DISCH PORT, (AS PER COA)
    RSUSA agents in loading ports:
    MEXSHIPPING AGENCIA SA de CV
    Tel 001 (52) 314-3325065
    Fax 011 (52)) 314-3326973
    email: mexshipping@mexshipping.com
    website: www.mexshipping.com
    PIC & AOH:
    Eloy Ventura    011 (52) 1 314-1062107
    Roberto Giron   011 (52) 1 314-1004364

    RSUSA Agents in Zhanjiang:
    Zhanjiang Bay Shipping Agency Ltd.
    Add: Room 06,16/F.,BLD A, Zhanjiang I-Fortune Mall,No.28 Renmin Road
    South, Xiashan Zhanjiang
    Guangdong, P.R.China. Postcode: 524001
    Tel: +86 759 2233838
    +86 759 2299338
    Fax: +86 759 2229299
    E-mail:shipping@zhanjiang-bay.com,
    zhanjiangbay@126.com
    PIC:Mr. Zengliang
    Tel: +86 759 2223998
    MOB:013702880539

12. ANY TAXES/DUES ON VSL/FRT TBF OWNERS A/C AND THE SAME ON CGO TBF CHTR'S ACCT.

13. LIGHTERING/LIGHTERAGE IF ANY TBF CHTRS ACCT/ARRANGEMENT.

15. N.O.R TB TENDERED UPON ARRIVAL ANYTIME; LAYTIME NON-REVERSIBLE, OWNRS TO AGREE 12 HOURS AS TURNING TIME AT FIRST LDG/DISCHARGE PORTS UNLESS SOONER COMMENCEMENT IN WHICH CASE ACTUAL TIME USED SHALL COUNT. AT SECOND LOADING PORT, LAYTIME COMMENCE UPON VSL ARRIVAL/NOR TENDERED

12/30/2009

16. OWNERS TO INFORM THE CHARTERERS/AGENTS WITH 10/7/5/3/2/1 DAY'S NOTICE OF VESSEL'S ETA LOADING/DISCHARGE PORT.

17. IN CASE OF NON-AVAILABLE OF ORIGINAL BS/L AT DISPORT, OWRS/MASTER AGREES TO DISCH CARGO AGAINST RECEIVER & CHRTRS COMBINED LOI AS PER OWNERS P & I WORDING BUT TO RELEASE CARGO ONLY AGAINST THE RECEIVERS BANK LOI AS PER OWNERS P & I WORDING.

19. CARGO QTTY TO BE ASCERTAINED BY VSL'S DRAFT SURVEY AT CHARTERERS ACCOUNT AND ARRANGEMENT BOTH ENDS.

20. ADDRESS COMMISSION: 2.5% PLUS 1.25 PCT TO ISC

21. OAP TBF CHRTR ACCT IF ANY.

22. ARTIFICIAL SEPERATION IF REQUIRED TO BE FOR CHTRS' TIME/EXPENSE/RISK

23. OWISE AS PER RSUSA GENCON CP WITH FLWG AMENDMENTS:

CLS 21:
7. REPLACE "COA" BY "CHARTER"
8. REPLACE "REQUIRED" BY "REASONABLE"

CLS 22:
1. ADD "CARGO IN ONE GRADE, IF MORE THAN ONE GRADE, SUBJECT TO MASTER'S STOWAGE PLAN AND NATUAL SEPARATION"
5. DEL
6. ADD "AT MANZANILLO" AFT "13.5M"
7. DEL AS N/A

CLS 26:
DEL "OR 1 S1SP ANY MAIN PORT IN NORTH CHINA"

CLS 27:
   ADD "UNLESS SOONER COMMENCEMENT IN WHICH CASE ACTUAL TIME USED SHALL COUNT." AFT "... AND RECEIVED Y SHIPPERS."
1. ADD "ANY TIME" AFT "UPON ARRIVAL" AND
   ADD "AT SECOND LOADING PORT, LAYTIME COMMENCE UPON VSL ARRIVAL/NOR TENDERED." TO THE END OF THE PARAGRAPH
2. DEL "NOT" BEFORE "TO COUNT AS..."

CLS 28:
2. ADD "ANYTIME" TO THE END

CLS 34:
REPLACE "COA" BY "CHARTER"

CLS 39:
DEL PARAGRAPH 2, 3, AND 5 AS N/A

CLS 40:
REPLACE "COA" WITH "CHARTER"

12/30/2009

| | |
|---|---|
| 1. Shipbroker(s) | RECOMMENDED<br>THE BALTIC AND INTERNATIONAL MARITIME COUNCIL<br>UNIFORM GENERAL CHARTER (AS REVISED 1922, 1976 and 1994)<br>(To be used for trades for which no specially approved form is in force)<br>CODE NAME: "GENCON"<br>Part I |
| | 2. Place and date of Charter Party |
| 3. Owners/Place of business (Cl. 1) | 4. Charterers/Place of business (Cl. 1)<br>RSUSA, LLC   HOUSTON TEXAS |
| 5. Vessel's Name (Cl 1)<br>SEE CLAUSE 2 and 4 | 6. GT/NT (CL 1)<br>SEE CLAUSE 2 and 4 |
| 7. DWT all told on summer load line in metric tons (abt.) (Cl. 1)<br>SEE CLAUSE 2 and 4 | 8. Present position (Cl. 1)<br>SEE CLAUSE 1 and 3 |
| 9. Expected ready to load (abt.) (Cl. 1)<br>SEE CLAUSE 1 | |
| 10. Loading port or place (Cl 1)<br>SEE CLAUSE 6 | 11. Discharging port or place (Cl 1)<br>SEE CLAUSE 7 |
| 12. Cargo (also state quantity and margin in Owners' option, if agreed; if full and complete cargo not agreed state "part cargo") (Cl. 1)<br>SEE CLAUSE 3 | |
| 13. Freight rate (also state whether freight prepaid or payable on delivery) (Cl. 4)<br>SEE CLAUSE 9 | 14. Freight payment (state currency and method of payment, also beneficiary and bank account) (Cl 4)<br>SEE CLAUSE 9 and 27 |
| 15. State if vessel's cargo handling gear shall not be used (Cl. 5)<br>GEARLESS | 16. Laytime (if separate laytime for load. and disch. is agreed, fill in a) and b). If total laytime for load. and disch., fill in c) only) (Cl. 6) |
| 17. Shippers/Place of business (Cl. 6) | a) Laytime for loading<br>SEE CLAUSE 6 |
| 18. Agents (loading) (Cl. 6)<br>OWNERS AGENTS - SEE CLAUSE 11 | b) Laytime for discharging<br>SEE CLAUSE 7 |
| 19. Agents (discharging) (Cl. 6)<br>OWNERS AGENTS - SEE CLAUSE 11 | c) Total laytime for loading and discharging |
| 20. Demurrage rate and manner payable (loading and discharging) (Cl. 7)<br>SEE CLAUSE 10 | 21. Cancelling date (Cl. 9)<br>SEE CLAUSE 4 and 5 |
| | 22. General Average to be adjusted at (Cl. 12)<br>NEW YORK - USA. |
| 23. Freight Tax (state if for Owners' account) (Cl. 13 (c)) | 24. Brokerage commission and to whom payable (Cl 15) |
| 25. Law and Arbitration (state 19 (a), 19 (b) or 19 (c) of Cl. 19; if 19 (c) agreed also state Place of Arbitration (if not filled in 19 (a) shall apply) (Cl. 19)<br>19 (B): NEW YORK - USA | |
| (a) State maximum amount for small claims/shortened arbitration (Cl. 19)<br>USD 50,000.- | 26. Additional clauses covering special provisions, if agreed.<br>SEE ADDITIONAL RIDER TO CHARTER PARTY CLAUSES FROM 01 UNTIL 27 |

It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter Party which shall include PART I as well as PART II. In the event of a conflict of conditions, the provisions of Part I shall prevail over those of Part II to the extent of such conflict.

| Signature (Owners) | Signature (Charterers) |
|---|---|
| | |

## PART II
### "Gencon" Charter (As revised 1922, 1976 and 1994)

1. It is agreed between the party mentioned in Box 3 as the Owners of the Vessel named in box 5, of the GT/NT indicated in Box 6 and carrying about the number of metric tons of deadweight capacity all told on summer loadline stated in Box 7, now in position as stated in Box 8 and expected ready to load under this Charter Party about the date indicated in Box 9, and the party mentioned as the Charterers in Box 4 that:
The said Vessel shall, as soon as her prior commitments have been completed, proceed to the loading port(s) or place(s) stated in Box 10 or so near thereto as she may safely get and lie always afloat, and there load a full and complete cargo (if shipment of deck cargo agreed same to be at the Charterers' risk and responsibility) as stated in Box 12, which the Charterers bind themselves to ship, and being so loaded the Vessel shall proceed to the discharging port(s) or place(s) stated in Box 11 as ordered on signing Bills of Lading, or so near thereto as she may safely get and lie always afloat, and there deliver the cargo.

2. **Owners' Responsibility Clause**
The Owners are to be responsible for loss of or damage to the goods or for delay in delivery of the goods only in case the loss, damage of delay has been caused by personal want of due diligence on the part of the Owners or their Manager to make the Vessel in all respects seaworthy and to secure that she is properly manned, equipped and supplied, or by the personal act or default of the Owners or their Manager.
And the Owners are not responsible for loss, damage or delay arising from other cause whatsoever, even from the neglect or default of the Master or crew or some other person employed by the Owners on board or ashore for whose acts they would, but for this Clause, be responsible, or from unseaworthiness of the Vessel on loading or commencement of the voyage or at any time whatsoever.

3. **Deviation Clause**
The Vessel has liberty to call at any port or ports in any order, for any purpose, to sail without pilots, to tow and/or assist Vessels in all situations, and also to deviate for the purpose of saving life and/or property.

4. **Payment of Freight**
(a) The freight at the rate stated in box 13 shall be paid in cash calculated on the intaken quantity of cargo.
(b) *Prepaid*. If according to Box 13 freight is to be paid on shipment, it shall be deemed earned and non-returnable, Vessel and/or cargo lost or not lost.
Neither the Owners nor their Agents shall be required to sign or endorse bills of lading showing freight prepaid unless the freight due to the Owners has actually been paid.
(c) ~~On delivery. If according to Box 13 freight, or part thereof, is payable at destination it shall not be deemed earned until the cargo is thus delivered. Notwithstanding the provisions under (a), if freight or part thereof is payable on delivery of the cargo the Charterers shall have the option of paying the freight on delivered weight/quantity provided such option is declared before breaking bulk and the weight/quantity can be ascertained by official weighing machine, joint draft survey or tally.
Cash for Vessel's ordinary disbursements at the port of loading to be advanced by the Charterers, if required, at highest current rate of exchange, subject to two (2) per cent to cover insurance and other expenses.~~

5. **Loading / Discharging**
(a) *Costs / Risks*
The cargo shall be brought into the holds, loaded, stowed and/or trimmed, tallied, lashed and/or secured and taken from the holds and discharged by the Charterers, free of any risk, liability and expense whatsoever to the Owners. The Charterers shall provide and lay all dunnage material as required for the proper stowage and protection of the cargo on board, the Owners allowing the use of all dunnage available on board. The Charterers shall be responsible for and pay the cost of removing their dunnage after discharge of the cargo under this Charter Party and time to count until dunnage has been removed.
(b) *Cargo Handling Gear*
~~Unless the Vessel is gearless or unless it has been agreed between the parties that the Vessel's gear shall not be used and stated as such in Box 15, the Owners shall throughout the duration of loading/discharging give free use of The Vessel's cargo handling gear and of sufficient motive power to operate all such cargo handling gear. All such equipment to be in good working order. Unless caused by negligence of the stevedores, time lost by breakdown of the Vessel's cargo handling gear or motive power - pro rata the total number of cranes/winches~~ ~~required at that time for the loading/discharging of cargo under this Charter Party - shall not count as laytime or time on demurrage. On request the Owners shall provide free of charge cranemen/winchmen from the crew to operate the Vessel's cargo handling gear, unless local regulations prohibit this, in which latter event shore labourers shall be for the account of the Charterers. Cranemen/winchmen shall be under the Charterer's risk and responsibility and as stevedores to be deemed as their servants but shall always work under the supervision of the Master.~~
(c) *Stevedore Damage*
The Charterers shall be responsible for damage (beyond ordinary wear and tear) to any part of the Vessel caused by Stevedores. Such damage shall be notified as soon as reasonably possible by the Master to the Charterers or their agents and to their Stevedores, failing which the Charterers shall not be held responsible. The Master shall endeavour to obtain the Stevedores' written acknowledgement of liability.
The Charterers are obliged to repair any stevedore damage prior to completion of the voyage, but must repair stevedore damage affecting the Vessel's seaworthiness or class before the Vessel sails from the port where such damage was caused or found. All additional expenses incurred shall be for the account of the Charterers and any time lost shall be for the account of and shall be paid to the Owners by the Charterers at the demurrage rate.

6. **Laytime**
*(a) Separate laytime for loading and discharging*
~~The cargo shall be loaded within the number of running days/hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time used shall count.
The cargo shall be discharged within the number of running days/hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time used shall count.~~ SEE CLAUSE 06 AND 07
*(b) Total laytime for loading and discharging*
~~The cargo shall be loaded and discharged within the number of total running days/hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time used shall count.~~
(c) *Commencement of laytime (loading and discharging)*
~~Laytime for loading and discharging shall commence at 13.00 hours, if notice of readiness is given up to and including 12.00 hours, and at 06.00 hours next working day if notice given during office hours after 12.00 hours. Notice of readiness at loading port to be given to the Shippers named in Box 17 or if not named, to the Charterers or their agents named in box 18. Notice of readiness at the discharging port to be given to the Receivers or, if not known, to the Charterers or their agents named in Box 19.~~ SEE CLAUSE 06 AND 07
If the loading/discharging berth is not available on the Vessel's arrival at or off the port of loading/discharging, the Vessel shall be entitled to give notice of readiness within ordinary office hours on arrival there, whether in free pratique or not, whether customs cleared or not. Laytime or time on demurrage shall then count as if she were in berth and in all respects ready for loading/discharging provided that the Master warrants that she is in fact ready in all respects. Time used in moving from the place of waiting to the loading/discharging berth shall not count as laytime.
If, after inspection, the Vessel is found not to be ready in all respects to load/discharge time lost after the discovery thereof until the Vessel is again ready to load/discharge shall not count as laytime.
Time used before commencement of laytime shall count.
* *Indicate alternative (a) or (b) as agreed, in Box 16.*

7. **Demurrage**
Demurrage at the loading and discharging port is payable by the Charterers at the rate stated in Box 20 in the manner stated in box 20 per day or pro rata for any part of a day. ~~Demurrage shall fall due day by day and shall be payable upon receipt of the Owner's invoice.~~
In the event the demurrage is not paid in accordance with the above, the Owners shall give the Charterers 96 running hours written notice to rectify the failure. If the demurrage is not paid at the expiration of this time limit and if the vessel is in or at the loading port, the Owners are entitled at any time to terminate the Charter Party and claim damages for any losses caused thereby.

8. **Lien Clause**
The Owners shall have a lien on the cargo and on all sub-freights payable in respect of the cargo, for freight, deadfreight, demurrage,

## PART II
"Gencon" Charter (As revised 1922, 1976 and 1994)

claims for damages and for all other amounts due under this Charter Party including costs of recovering same.

9. **Cancelling Clause** - *SEE CLAUSE 05*
   (a) Should the Vessel not be ready to load (whether in berth or not) on the cancelling date indicated in box 21, the Charterers shall have the option of cancelling this Charter Party.
   (b) should the Owners anticipate that, despite the exercise of due diligence, the Vessel will not be ready to load by the canceling date, they shall notify the Charterers thereof without delay stating the expected date of the Vessel's readiness to load and asking whether the Charterers will exercise their option of canceling the Charter Party, or agree to a new canceling date.
   Such option must be declared by the Charterers within 48 running hours after the receipt of the Owner's notice. If the Charterers do not exercise their option of cancelling, then this charter Party shall be deemed to be amended such that the seventh day after the new readiness date stated in the Owners' notification to the charterers shall be the new canceling date.
   The provisions of sub-clause (b) of this Clause shall operate only once, and in case of the Vessel's further delay, the Charterers shall have the option of Canceling the Charter Party as per sub-clause (a) of this Clause.

10. **Bills of Lading**
    Bills of Lading shall be presented and signed by the Master as per the "Congenbill" Bill of Lading form, Edition 1994, without prejudice to this Charter Party, or by the Owners' agents provided written authority has been given by the Owners to the agents, a copy of which is to be furnished to the Charterers. The Charterers shall indemnify the Owners against all consequences or liabilities that may arise from the signing of bills of lading as presented to the extent that the terms or contents of such bills of lading impose or result in the imposition of more onerous liabilities upon the Owners than those assumed by the Owners under this Charter Party.

11. **Both-to-Blame Collision Clause**
    If the Vessel comes into collision with another ship as a result of the negligence of the other vessel and any act, neglect or default of the Master, Mariner, Pilot or the servants of the Owners in the navigation or in the management of the vessel, the owners of the cargo carried hereunder will indemnify the carrier against all loss or liability to the other or non-carrying vessel or her owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said cargo, paid or payable by the other or non-carrying vessel or her owners to the owners to said cargo and set-off recouped or recovered by the other or non-carrying ship or her owners as part of their claim against the carrying Vessel or the Owners. The foregoing provisions shall also apply where the owners, operators or those in charge of any ship or ships or objects other than, or in addition to, the colliding ships or objects are at fault in respect of a collision or contact.

12. **General Average and New Jason Clause**
    General average shall be adjusted, stated and settled according York-Antwerp rules 1994 or any subsequent modification thereof. Propietors of cargo to pay the cargo's share in the general expenses even if same have been necessitated through neglect or default of the Owners' servants (see Clause 2).
    If General Averdago is to be adjusted in accordance with the law and practice of the United States of America, the following Clause shall apply: "In the event of accident, danger, damage or disaster before or after the commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the carrier is not responsible, by statute, contract or otherwise, the goods, shippers, consignees or owners of the goods shall contribute with the carrier in general average in the payment of any sacrifices, losses or expenses of a general average nature that may be made or incurred and shall pay salvage and special charges in respect of the goods. If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully as if the said salving ship or ships belonged to strangers. Such deposit as the carrier or his agents may deem sufficient to cover estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery.".

13. **Taxes and Dues Clause**
    (a) *On Vessel* – The Owners shall pay all dues, charges and taxes customarily levied on the Vessel, howsoever the amount thereof may be assessed.
    (b) *On cargo* – The Charterers shall pay all dues, charges, duties and taxes customarily levied on the cargo, howsoever the amount thereof may be assessed.
    (c) *On freight* – Unless otherwise agreed in Box 23, taxes levied on the freight shall be for the Charterers' account.

14. **Agency**
    In every case the Owners shall appoint their own Agent both at the port of loading and the port of discharge.

15. **Brokerage**
    A brokerage commission at the rate stated in Box 24 on the freight, dead-freight and demurrage earned is due to the party mentioned in Box 24.
    In case of non-execution 1/3 of the brokerage on the estimated amount of freight to be paid by the party responsible for such non-execution to the Brokers as indemnity to the latter's expenses and work. In case of more voyages the amount of indemnity to be agreed.

16. **General Strike Clause**
    (a) If there is strike or lock-out affecting or preventing the actual loading of the cargo, or any part of it, when vessel is ready to proceed from her last port or at any time during the voyage to the port or ports of loading or after her arrival there, the Master or the Owners may ask the Charterers to declare, that they agree to reckon the laydays as if there were no strike or lock-out. Unless Charterers have given such declaration in written (by telegram if necessary) within 24 hours, Owners shall have the option of cancelling this contract. If part cargo has already been loaded Owners must proceed with same (freight payable on loaded quantity only) having liberty to complete with other cargo on the way for their own account.
    (b) If there is strike or lock-out affecting or preventing the actual discharging of the cargo on or after the Vessel's arrival at or off port of discharge and same has not been settled within 48 hours, the Charterers shall have the option of keeping the Vessel waiting until such strike or lock-out is at an end against paying half demurrage after expiration of the time provided for discharging until the strike or lock-out terminates and thereafter full demurrage shall be payable until the completion of discharging, or of ordering the Vessel to a safe port where she can safely discharge without risk of being detained by strike or lock-out. Such orders to be given within 48 hours after the Master or the Owners have given notice to Charterers of the strike or lock-out affecting the discharge. On delivery of the cargo at such port, all conditions of this charter party and/of the Bill of lading shall apply and the Vessel shall receive the same freight as if she had discharged at the original port of destination, except that if the distance of the substituted port exceeds 100 nautical miles the freight on the cargo delivered at the substituted port to be increased in proportion.
    (c) Except for the obligations described above, neither Charterers nor the Owners shall be responsible for the consequences of any strikes or lock-outs preventing or affecting the actual loading or discharging of the cargo.

17. **War Risks ("Voywar 1993")**
    (1) For the purpose of this clause, the words:
        (a) The "Owners" shall include the shipowners, bareboat charterers, disponent owners, manager or other operators who are charged with the management of the vessel, and the Master; and
        (b) "War Risks" shall include any war (whether actual or threatened), act of war, civil war, hostilities, revolution, rebellion, civil commotion, warlike operations, the laying of mines (whether actual or reported), act of piracy, acts of terrorists, act of hostility or malicious damage, blockades (whether imposed against all vessels or imposed selectively against vessels or certain flags or ownership, or against certain cargoes or crews or otherwise howsoever), by any person, body, terrorist or political group or the Government of any state whatsoever, which, in the reasonable judgement of the Master and/or the Owners may be dangerous or are likely to be, or to become dangerous to the vessel, her cargo, crew or other person on board the vessel.
    (2) If at any time before the vessel commence the loading, it appears that, in the reasonable judgement of the Master and/or the Owners, performance of the Contract of Carriage, or any part of it may expose or is likely to expose the vessel, her cargo, crew or other

## PART II
### "Gencon" Charter (As revised 1922, 1976 and 1994)

person on board the Vessel to War Risk, the owners to give notice to the Charterers cancelling this contract of carriage or may refuse to perform such part of it as may expose, or may be likely to expose the Vessel, her cargo, crew or other persons on board to War Risks; provided always that if this Contract of Carriage provides that loading or discharging is to take place within a range of ports, and at the port or ports nominated by the Charterers the vessel, her cargo, crew or other persons on board the vessel may be exposed, or may be likely to be exposed, to War Risks, the Owners shall first require the Charterers to nominate any other safe port which lies within the range for loading or discharging and may only cancel this Contract of Carriage if the Charterers shall not have nominated such safe port or ports within 48 hours of receipt of notice of such requirement.

(3) The Owners shall not be required to continue to load cargo for any voyage, or to sign bills of lading for any port or place, or to proceed or continue on any voyage, or on any part thereof, or to proceed through any canal or waterway, or to proceed to or remain at any port or place whatsoever, where it appears, either after the loading of the cargo commences, or at any stage of the voyage thereafter before the discharge of the cargo is completed, that, in the reasonable judgement of the Master and/or the Owners, the vessel, her cargo (or any part thereof), crew or other person on board the Vessel (or any one or more of them) may be, or are likely to be, exposed to War Risks. If it should so appear the Owners may by notice request the Charterers to nominate a safe port for the discharge of the cargo or any part thereof, and if within 48 hours of the receipt of such notice, the Charterer shall not have nominated such port, the Owners may discharge the cargo at any safe port of their choice (including the port of loading) in complete fulfilment of the Contract of Carriage. The Owners shall be entitled to recover from the Charterers the extra expenses of such discharge and, if the discharge take place at any port other than the loading port, to receive the full freight as though the cargo had been carried to the discharging port and if the extra distance exceeds 100 miles, to additional freight which shall be the same percentage of the freight contracted for as the percentage which the extra distance represents to the distance of the normal and customary route, the Owners having a lien on the cargo of such expenses and freight.

(4) If at any stage of the voyage after the loading of the cargo commences, it appears that, in the reasonable judgement of the Master and/or the Owners, the Vessel, her cargo, crew or other persons on board the vessel may be, or are likely to be exposed to war risks on any part of the route (including any canal or waterway) which is normally and customarily used in a voyage of the nature contracted for, and there is another longer route to the discharging port, the Owners shall give notice to the Charterers that this route will be taken. In this event the Owners shall be entitled, if the total extra distance exceeds 100 miles, to additional freight which shall be the same percentage of the freight contracted for as the percentage of the extra distance represents to the distance of the normal and customary route.

(5) The vessel shall have liberty:-
(a) to comply with all orders, directions, recommendations or advice as to departure, arrival, routes, sailing in convoy, ports of call, stoppages, destinations, discharge of cargo, delivery or in any way whatsoever which are given by the Government of the Nation under whose flag the vessel sails, or other Government to whose laws the Owners are subject, or any other Government which so requires, or any body or group acting with the power to compel compliance with their orders or directions;
(b) to comply with the orders, directions, or recommendations of any war risks underwriters who have the authority to give the same under the terms of the war risks insurance;
(c) to comply with the terms of any resolution of the Security Council of the United Nations, any directives of the European Community, the effective orders of any other Supranational body which has the right to issue and give the same, and with national laws aimed at enforcing the same to which the Owners are subject, and to obey the orders and directions of those who are charged with the enforcement;
(d) to discharge at any other port any cargo or part thereof which may render the Vessel liable to confiscation as a contraband carrier;
(e) to call at any other ports to change the crew or any part there of or other person on board the Vessel when there is reason to believe that they may be subject to internment, imprisonment or other sanctions;
(f) where cargo has not been loaded or has been discharged by the Owners under any provisions of this clause, to load other cargo for the Owners own benefit and carry it to any other port or ports whatsoever, whether backwards or forwards or in a contrary direction to the ordinary or customary route.

(6) If in compliance with any of the provisions of sub-clauses (2) to (5) of this Clause anything is done or not done, such shall not be deemed to be a deviation, but shall be considered as due fulfilment of the Contract of Carriage.

18. **General Ice Clause**
*Port of loading*
(a) In the event of the loading port being inaccessible by reason of ice when the Vessel is ready to proceed from her last port or at any time during the voyage or on the Vessel's arrival or in case frost sets in after the Vessel's arrival, the Master for fear of being frozen in is at liberty to leave without cargo, and this Charter Party shall be null and void.
(b) If during loading the Master, for fear of the Vessel being frozen in, deems it advisable to leave, he has liberty to do so with what cargo he has on board and to proceed to any other port or ports with option of completing cargo for the Owners' benefit for any port or ports including port of discharge. Any part cargo thus loaded under this Charter Party to be forwarded to destination at the Vessel's expense but against payment of freight, provided that no extra expenses be thereby caused to the Charterers, freight being paid on quantity delivered (in proportion if lumpsum), all other conditions as per this Charter Party.
(c) In case of more than one loading port, and if one or more of the ports are closed by ice, the Master or the Owners to be at liberty either to load the part cargo at the open port and fill up elsewhere for their own account as under section (b) or to declare the Charter Party null and void unless the Charterers agree to load full cargo at the open port.

*Port of discharge*
(a) Should ice prevent the Vessel from reaching port of discharge the Charterers shall have the option of keeping the Vessel waiting until the reopening of navigation and paying demurrage or of ordering the Vessel to a safe and immediately accessible port where she can safely discharge without risk of detention by ice. Such orders to be given within 48 hours after the Master or the Owners have given notice to the Charterers of the impossibility of reaching port of destination.
(b) If during discharging the Master for fear of the Vessel being frozen in deems it advisable to leave, he has liberty to do so with what cargo he has on board and to proceed to the nearest accessible port where she can safely discharge.
(c) On delivery of the cargo at such port, all conditions of the Bill of Lading shall apply and the Vessel shall receive the same freight as if she had discharged at the original port of destination, except that if the distance of the substituted port exceeds 100 nautical miles, the freight on the cargo delivered at the substituted port to be increased in proportion.

19. **Law and Arbitration**
\* (a) ~~This Charter Party shall be governed by and construed in accordance with English law and any dispute arising out of this Charter Party shall be referred to arbitration in London in accordance with the arbitrations Acts 1950 and 1979 or any statutory modification or re-enacment thereof for the time being in force. Unless the parties agree upon a sole arbitrator, one arbitrator shall be appointed by each party and the arbitrators so appointed shall appoint a third arbitrator, the decision of the three-man tribunal thus constituted or any two of them, shall be final. On the receipt by one party of the nomination in writing of the other's party arbitrator, that party shall appoint their arbitrator within fourteen days, failing which the decision of the single arbitrator appointed shall be final.~~
~~For disputes where the total amount claimed does not exceed the amount stated in Box 25\*\* the arbitration shall be conducted in accordance with the Small Claim Procedure of the London Maritime Arbitrator Association.~~

\* (b) This Charter Party shall be governed by and construed in accordance with Title 9 of the United States Code and the Maritime Law of the United States and should any dispute arise out of this Charter Party, the matter in dispute shall be referred to three persons at New York, one to be appointed by each of parties hereto and the third by the two so chosen; their decision or that of any two of them, shall be final,

## PART II
### "Gencon" Charter (As revised 1922, 1976 and 1994)

and for the purpose of enforcing any award, this agreement may be made a rule of the Court. The proceedings shall be conducted in accordance with the rules of the Society of Maritime Arbitrators, Inc.
For disputes where the total amount claimed by either party does not exceed the amount stated in Box 25** the arbitration shall be conducted in accordance with the Shortened Arbitration Procedure of the Society of Maritime Arbitrators, Inc..

\* (c) Any dispute arising out of this Charter Party shall be referred to arbitration at the Place indicated in Box 25, subject to the procedures applicable there. The laws of the place indicated in Box 25 shall govern this Charter Party.

\* (d) If Box 25 in Part 1 is not filled in, sub-clause (a) of this Clause shall apply.

\* (a), (b) and (c) are alternatives; indicate alternative agreed in Box 25.
\** Where no figure is supplied in Box 25 in Part 1, this provision only shall be void but the other provisions of this Clause shall have full force and remain in effect.

## RIDER TO CHARTER PARTY DATED

## BETWEEN XXXX AS OWNERS AND RSUSA AS CHARTERERS

### CLAUSE 20: - CONTRACT VALIDITY

1. For Laycan : September 20-30, 2009

2. All terms and conditions of this C/P as well as the negotiation to be kept strictly private and confidential.

### CLAUSE 21: - VESSEL

1. Owners to nominate _____.

2. Vessel _____ subject Charterers/Shippers acceptance on a case by case basis but any extra overage insurance, if any, to be for Charterers' account.

3. As particular condition cargo shall be loaded in places accessible for Charterer's loading facilities and receivers grabs at destination ports.

4. Performing vessels to be classed Lloyds 100 A1 or equivalent.

5. Vessels to be fully P and I covered.

6. During the Currency of this Charter Party, the Owners shall procure that both the vessel and the Owners (as defined by the I.S.M. Code) shall comply with the requirements of the I.S.M. Code. Upon request the Owners shall provide a copy of the relevant document of compliance (DOC) and safety management certificate (SMC) to the Charterers.

7. Except as otherwise provided in this COA, loss, damage, expense or delay cost by failure on the part of Owners and the Ship to comply with the ISM Code shall be for Owners account.

8. Vessel must deballast simultaneously to loading operation within required time.

### CLAUSE 22: - CARGO / QUANTITY

1. CARGO: IRON ORE LUMPS 0-3" in bulk loaded and self trimmed.

2. QUANTITY: 70,000 metric tons +/- 10%.

3. _____.

4. All cargo to be loaded in accordance with IMO recommendations.

5. Charterers' option to require Owners to load up to two hbi grades in one vessel. In such case, Owners shall load in different holds the different grades.

6. Shipment to be of about 70,000 Metric Tons 10 per cent more or less in Owner's option, always subject to arrival draft permitted. Charterers do guarantee draft minimum draft of 13.5 m, same to be on charterer responsibility.

7. Any other shipment size to be evaluated by both parties on a case by case basis, taking into account the cargo quantity available at loading port, and the stock yard capacity at Port of Loading.

1

**CLAUSE 23:** - NOMINATIONS AND NOTICES/NOMINATION

1. _____.
2. _____.
3. _____.

4. Vessel description shall include:

   Name, IMO Number, flag, age, dwt on draft, loa, beam, holds/hatches.

5. Owners to give Shippers and Charterers 5 days and further 72/48/24 hours notice of estimated time of arrival at loading port. With 5 (five) days notice also inform the seller and its port administration at Loading Port about each vessel's cargo plan and provide the following details:

   i Arrival and departure drafts
   ii Air draft (from water line to top of hatch coamings)

   Any delay in ETA in excess of 48 hours from the previous ETA to be communicated immediately together with the reason for such delay.

   All relevant vessel documents to be sent to RSUSA within 10 days of arrival

6. Upon completion of loading, the Owners shall inform the Charterers quantity loaded and final stowage plan together with ETA discharge port. CHARTERERS WILL PERFROM DRAFT SURVEY ON BOTH ENDS. Owners to give Charterers 5 days and further 72/48/24 hours notice of ETA discharging port. Any delay in ETA in excess of 12 hours from the previous ETA, to be communicated immediately together with the reason for such delay.

**CLAUSE 24:** - VESSEL'S SUBSTITUTION.

1. Vessel's substitutions, if alllowed, can be performed up to five (5) days before first day of laydays if the nomination provides the same or later vessel's ETA and same details of the originally nominated vessel but time starts to count since vessel is berth, and ready to load in all respect.

2. Deleted

3. In case vessel loses her cancelling date, time start to count since vessel is berth, and ready to load in all respects, including but not limited to port authorities liberation granted, holds open and clean. However, vessel's turn to be respected at all times.

**CLAUSE 25:** - LOADING PORT

   1 safe berth Manzanillo, Mexico (Terminal draft limit 13.5 M)

**CLAUSE 26:** - DISCHARGE PORT

   1 (one) safe berth, 1(one) safe port ZHANJIANG, China or 1 SB1SP any main port in North China. Port of discharge and berth AAAA and to be declared prior to commencement of loading.

**CLAUSE 27:** - LOADING CONDITIONS

2

Load rate :18.000 tons pwwd shinc

Time to start counting 12 hours after tendering a valid Notice of Readiness and received by Shippers.

1. At loading port, vessel shall tender Notice of Readiness upon arrival, or as near thereto is allowed by the coast guard to get safely, being ready to receive the cargo.

2. In case vessel is unable to commence loading operations due to lack of free pratique and/or customs clearance, time used to obtain free pratique and/or custom clearance, and/or draft survey at vessel request not to count as laytime or time on demurrage.

3. Shifting time from anchorage or waiting place to loading berth and time used for deballasting or any time lost due to owners, not to count as laytime or time on demurrage, even on demurrage.

4. On berthing the vessel to be ready to load in all respects with hatches opened, weather permitting. Opening and closing hatches not to count as laytime unless vessel is on demurrage.

### CLAUSE 28: - DISCHARGE CONDITIONS

Unload rate : 30,000 tons pwwd, shinc.

1. One safe port one safe berth ZHANJING, CHINA or any main port in North China 13,000 metric tons, per weather working days of 24 consecutive hours, Sundays and holidays included, based in min 4 holds. Time to start counting 12 hours after tendering Notice of Readiness and received by Charterers unless sooner commencement in which case actual time used shall count.

2. At discharging port, vessel shall tender Notice of Readiness upon arrival at the port.

3. In case vessel is unable to commence discharging operations due to lack of free pratique or custom clearance, time used to obtain free pratique and/or custom clearance to count as laytime or time on demurrage. Shifting time from anchorage or waiting place to discharging berth to count as laytime or time on demurrage, even on demurrage.

4. Once the vessel is berthed at discharging port, master shall give the port captain a copy of the stowage plan indicating metric tons loaded per hold.

5. In case of more than one iron ore grade, the stowage plan shall indicate the name of each grade loaded in each hold.

6. On berthing at the port of discharge, the vessel to be ready to discharge in all respects with hatches opened, weather permitting. Opening and closing hatches and/or draft survey at vessel request not to count as laytime unless vessel is on demurrage.

7. Charterers have the right to work all hatches at the same time. Master to define unloading sequence to minimize crane's displacement/vessel shifting alongside the berth.

8. Vessel to supply sufficient power and light, as on board for discharging the cargo at night, free of expense to the Charterers.

9. Charterers shall instruct their stevedores to exercise due diligence to discharge all cargo from the vessels holds. Holds cleaning / washing for the next cargo to be on Owners' account. It is totally forbidden to flood any hold while washing. In case of any hold were flooded, owners must pay all extra cost due to pump ashore water in excess used on washing operation.

10. NOT APPLICABLE

3

11. If one or more cranes are not working properly then laytime to be pro-rated over working/non-work

12. NOT APPLICABLE

## CLAUSE 29: - FREIGHT RATE AND PAYMENTS

1. US$_____. pmt FIOST.   Freight deemed earned as cargo being loaded and non-returnable ship and/or cargo lost or not lost.

2. Freight to be transferred 95 per cent less and to Owners designated Bank within five banking day after receiving fax copy of the original freight invoice and B/L provided such original is sent by courier as soon as possible to Charterers.

## CLAUSE 30: - DEMURRAGE AND DESPATCH

Demurrage:    -USD _____ pdprhd

1. Half dispatch both ends

2. Owners will present statement of facts, laytime calculations together with all supporting documents latest 15 days after discharge of each corresponding voyage and owners calculations to be final and accepted.

    -Charterers will revert with their comments within 15days after having received the documentation.
    -Owners and Charterers must achieve an agreement within the necessary time.
    -Owners must send the invoice according to the agreement
    -Charterers to transfer 100 per cent of agreed amount of demurrage to Owners' designated bank account (see Clause 41) within 10 working days after the reception of the invoice. Should however any delay in China take place that prevents immediate berthing and discharge upon arrival causing said vessel to incur detention/demurrage Charterers to pay detention/demurrage by wire every 3 days until loading commences.

3. Lay time to be non-reversible.

## CLAUSE 31: - AGENTS

Owners Agents at load port, Charterers Agent at discharge port SUB OWNERS approval of competitive D/A.

## CLAUSE 32: -DELETED

## CLAUSE 33: Deleted.

## CLAUSE 34: POLLUTION

During the currency of this COA Owners shall to comply withall Enviromental's regulations at loading port. Charterers are not responsible if any environmental accident happened neither at Loading Port nor during navigation or unloading Port. Should argentine and/or Uruguayan authorities establish more, than already today's established ones, demanding regulations as regard to pollution in the river plate and/or in the river Parana respective jurisdictional waters during this contract, then Charterers shall implement at their cost the means and equipment to allow the vessel to pump ashore the water used for washing and cleaning the cargo holds All time used for washing, cleaning and pumping not to count as laytime or time on demurrage.

4

**CLAUSE 35: - PORT EXPENSES**

1. All applicable Free In/Free out port dues, charges and fees, disbursements, pilots, tugs and agency fees shall be paid by Owners at both ends (except quay dues at discharging port which if applicable, to be for Charterers account).

2. Terms of this contract are based FIFOS (free in free out stowed) terms

**CLAUSE 36: - DAMAGES**

1. All damages inflicted to vessel by Stevedores during loading and/or discharging operations to be settled directly between Owners and Stevedores, but Charterers to remain ultimately responsible. Owner/ Master must notify to Stevedores and Charterers in writing

2. Damage to the vessel inflicted by stevedores during loading/discharging operations affecting seaworthiness are to be repaired before vessel's departure.

3. All damages inflicted by vessel (or its Master, crew, equipments, etc) to Terminal facilities, Stevedores (or their equipments) during loading and/or discharging operations, to be settled directly between Owner and Stevedores or Terminal Authorities, but Owners to remain ultimately responsible.

**CLAUSE 37: -ARBITRATION**

1. Should any dispute arise between the Owners and the Charterers the matter in dispute shall be referred to the arbitration Tribuanal in New York, 3 arbitrators shall be appointed, one by each of the parties hereto and the third by two so chosen, their decision or that of any two of them shall be final for the purpose of enforcing any award this agreement may be made a rule to the court.

2. General Average to be settled in New York in accordance with the York/Antwerp Rules 1974 or latest amendment.

3. This contract shall be governed by English Law.

**CLAUSE 38: - GENERAL CONDITIONS:**

The New Jason Clause, Clause Paramount, new Both to Blame Collision Clause, P&I Bunker Deviation Clause as well as the Gencon Strike Clause are to form part of this Charter Party and are to be considered incorporated into all Bills of Lading issued under this contract.

**CLAUSE 39: - FORCE MAJEURE**

1. Each of the parties is responsible for the non-fulfilment, total or partial, of its obligations under the present contract, unless it can be proved that unexecution arises totally or partially from acts constituting an event of force majeure.

The following in particular are considered as cases of force majeure:

-Damage or destruction to installations and equipment of the Charterers or prolonged strike of personnel making the discharge or the utilization of material impossible.

-All interruptions of delivery from the supplier for reason of force majeure to the extent that the Charterers cannot replace this source of supply by other envisaged in the present contract.

The party that suffers a case of force majeure will be relieved of its obligation to execute the contract during the period of force majeure including the above mentioned cases.

5

2. If and when a force majeure event is declared for a certain voyage, this exemption of liability will apply only for the voyage in question and in accordance with the provisions of the Charter Party annexed to the present contract. It will not modify the contractual obligations of the parties for the rest of the contract.

3. If the event of force majeure affects several voyages or creates a situation of a nature to make the execution of the contract impossible, the parties will meet to investigate by common agreement the measures enabling them to alleviate the consequences.

4. If force majeure and in particular if one of the above mentioned cases in paragraph A) hereof occurs, the party seeking relief must inform the other party in writing as soon as possible.

5. The quantity of cargo which because of force majeure has not been carried, the party who has suffered force majeure will have the option to:

-Either cancel and deduct that quantity from the total contract quantity, or transport that quantity after the termination of force majeure and in the freight conditions provided for in the contract during a period to be fixed by mutual agreement.

If, following force majeure or in one of the cases described in paragraph A) hereof no quantity of cargo has been transported under this contract by the Owner, or proposed for loading by the Charterers during a period of six consecutive months or more, each party has the right to cancel the contract by a notice in writing sent by recorded delivery without any responsibility.

### CLAUSE 40: - CHARTER PARTY

The attached Gencon Charter Party form part I and II is considered as part of this COA. In case of any contradiction between the Charter Party form printed clauses and the clauses agreed in this COA the latter will apply.

### CLAUSE 41:

Both at loading and discharging port(s), Shippers / Receivers / Charterers shall operate ship without affecting its seaworthy/safety conditions during loading/discharging operations always at vessels command satisfaction.

### CLAUSE 42: - EXCEPTION CLAUSE

Vessel is not responsible for acts of God, perils of the sea, fire, barratry of the master and/or crew, enemies, pirates and thieves, arrest and restraints of princess, rules and people, collisions, stranding and other accidents of navigation even when occasioned by negligence of default or error of judgement of pilot, master, mariners or others servants of the Owners. Vessel is neither responsible for losses through explosion, bursting of boilers, breakage of shafts or any latent defect of machinery or hull not resulting from lack of due diligence by the Owners of the vessel or any of them, or by the ships husbands or manager.

### CLAUSE 43: - PAYMENT INSTRUCTIONS

AS PER CLAUSE 29

### CLAUSE 44: - REPRESENTATIVE OFFICE

TO BE COMPLETED

### CLAUSE 45 – DIFFERENCE OF WEIGHT

The Bill of Lading weight shall be determined in accordance with international practice on Draft Survey Certificate. Draft survey and arrangements to be for Charters account on both ends. Owners warrant that

6

each performing vessel is suitable in every respect for accurate determination of cargo weight by draft survey. Owners reserve their right to remark Mate Receipts/Bills of Lading whenever Master deems it necessary due to a discrepancy between the total cargo on board as declared by shippers determined by the survey company and the one determined by Master.

In this case, if the total cargo discharged is in line with Master's figures then Charterers shall keep Owners harmless of any shortage claim including time lost and all so incurred expenses. Same procedure will be followed whenever two grades are loaded and the total cargo on board is in line with the Custom House tolerance but there is a cargo difference within each grade. In all cases Owners will provide Charterers with supporting documents/invoices showing the payments effected. Charterers to refund Owners such expenses upon receipt of relevant documents/invoices.

## CLAUSE 46 - TERMINATION

Charterers may terminate this contract and claim reasonable costs and damages to Owners if the nominated vessel for a voyage misses the cancelling date and Owners were unable to nominate a substitute vessel, allowing Charterers to exercise its option to cancel the voyage in accordance with clause

**For and on behalf of**
**OWNERS & AGENTS**

**For and on behalf of**
**CHARTERERS**